**SAVE OUR SPRINGS ALLIANCE, INC. and Erin Foster, Relators,**

v.

**Honorable Peter M. LOWRY, Judge, Respondent.**

**No. 03–96–00531–CV.**

Court of Appeals of Texas, Austin.

Sept. 27, 1996.

Philip Durst, Wiseman, Durst, Tuddenham & Owen, Austin, for relators.

Myra A. McDaniel, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., Austin, for respondent.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

PER CURIAM.

Relators Save Our Springs Alliance, Inc. ("SOS Alliance") and Erin Foster move this Court for leave to file a petition for writ of mandamus or for an accelerated appeal and immediate temporary relief. The SOS Alliance and Foster seek a writ of mandamus directing the Honorable Peter M. Lowry to vacate his September 20, 1996 order dismissing their suit challenging real-party-in-interest Austin Community College's decision to purchase certain real estate. By their suit, relators alleged that Austin Community College ("ACC") reached its decision to purchase the property at a meeting that violated the Texas Open Meetings Act ("Open Meetings Act" or "Act"). *See* Tex. Gov't Code Ann. §§ 551.001–.146 (West 1996 & Supp. 1995). We grant the motion for leave to file, and, without hearing oral argument, will conditionally grant the petition for writ of mandamus.

## FACTS

In September 1995, the Austin Community College District issued bonds for the purpose of acquiring real estate to construct one or more new campuses. During subsequent months, ACC staff presented options on various properties to its Board of Trustees. On April 1, 1996, the ACC Board of Trustees met in closed session to consider which tract to purchase. The sole item captioned on its agenda was "Real Estate Matters." On its return to open session, the Board voted to purchase a tract in Southwest Austin known as the Shadowridge tract, which lies in the Barton Springs Watershed. The SOS Alliance and Foster filed suit on August 29, 1996, alleging that ACC had violated the Texas Open Meetings Act by improperly noticing the April 1, 1996 meeting, and asking that the court enjoin ACC from purchasing the tract.

## ANALYSIS

We decide only whether the SOS Alliance and Erin Foster have standing under the Open Meetings Act to challenge ACC's alleged violation of the Act's notice provision. Section 551.142 of the Texas Government Code provides:

> An *interested person,* including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.

Tex. Gov't Code Ann. § 551.142(a) (West 1994) (emphasis added). The trial court found that neither the SOS Alliance nor Foster was an interested person under section 551.142(a). We disagree.

The Open Meetings Act was promulgated to encourage good government by ending, to the extent possible, closed-door sessions in which deals are cut without public scrutiny. *See Cox Enters., Inc. v. Board of Trustees of the Austin Indep. Sch. Dist.,* 706 S.W.2d 956, 960 (Tex.1986) ("The Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies."). The Act allows a court to void acts taken in violation of its provisions to ensure that governmental bodies abide by its strictures.

In keeping with the spirit of the Act, Texas courts have interpreted the standing issue broadly. In *Cameron County Good Government League v. Ramon,* 619 S.W.2d 224 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.), the court held that the Good Government League and various individuals had standing to challenge the county commissioners' alleged violations of the Open Meetings Act.[1] *Id.* at 230. And in *City of Fort Worth v. Groves,* 746 S.W.2d 907 (Tex.App.—Fort Worth 1988, no writ), the court held that a citizen and resident of the county who lived in the city of Arlington had the right to challenge the county's agreement to lease its

---

1. The court did not state the basis for the individual plaintiff's standing.

convention center to Fort Worth for $30. *Id.* at 912–13.

Moreover, in *Finlan v. City of Dallas*, 888 F.Supp. 779 (N.D.Tex.1995), a federal district court found that taxpayer citizens who had a "keen interest (although such an interest is not necessary) in the workings of their government" were entitled to bring an action under section 551.142 to enjoin a downtown sports development committee. *Id.* at 784.

The SOS Alliance is a loosely-knit group of approximately 1,100 persons, including some who live in Travis and Hays counties, concerned with preserving the environmental and recreational quality of the Edwards Aquifer and Barton Springs Watershed. Foster, president of a local homeowners group, lives approximately three miles from the proposed site and alleges that she would be affected by increased traffic in the area.

■ ACC urges us to apply the test for associational standing to determine whether the SOS Alliance may bring suit. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440 (Tex.1993). Under the standard adopted by the supreme court, the SOS Alliance must show that (1) its members have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* at 447–48.

■ The SOS Alliance's petition alleges that its members are residents of Travis and Hays counties who are concerned with water quality in the Edwards Aquifer and Barton Springs Watershed. Under *Groves*, individual members living in the affected area have standing to sue. The interest that the SOS Alliance seeks to protect by this suit—water quality in the Edwards Aquifer and Barton Springs Watershed—unquestionably reflects the organization's expressed purpose. Finally, neither the claim that the Open Meetings Act was violated nor the requested injunction requires the participation of individual members of the organization. We hold that the SOS Alliance meets the *Texas Association of Business* test for associational standing.

■ ACC claims that Foster does not have standing because she is not a resident of the community college district so consequently does not pay taxes and is not entitled to vote in district elections. But the interest protected by the Open Meetings Act is not simply that of the taxpayer. *Cf. Laidlaw Waste Sys. (Dallas), Inc. v. Wilmer*, 904 S.W.2d 656, 660 (Tex.1995) (assuming while not holding that company holding permit to construct and operate municipal solid waste landfill on site annexed by city had standing under the Open Meetings Act). The issue is whether Foster is genuinely at risk of being affected by the proposed campus. The risk that the campus will adversely affect her neighborhood is sufficient to confer standing on Foster. She does not have to prove the extent of future harm to proceed.

ACC argues that the plaintiff seeking to bring an Open Meetings Act challenge under section 551.142 must show that it is "affected differently from other citizens." Neither *Cameron County* nor *Groves* requires that the plaintiff exhibit an interest "different" from that of the general public. In fact, the interest protected by the Open Meetings Act *is* the interest of the general public. As the Texas Supreme Court stated in *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762 (Tex.1991), the intended beneficiaries of the Open Meetings Act are "members of the interested public." *Id.* at 765.

ACC relies on *Scott v. Board of Adjustment*, 405 S.W.2d 55 (Tex.1966), and *Hardy v. Hannah*, 849 S.W.2d 355 (Tex.App.—Austin 1992, writ denied), to support its assertion that the plaintiff must be affected differently from other citizens. Both cases are clearly distinguishable. Neither case involves the Open Meetings Act. While both recite the general rule that an individual cannot institute a cause of action without being affected differently from all other citizens, they also note that a particular statute may confer more expansive standing as an exception to the rule. The Texas Legislature exercised its discretion to grant broader standing to citizens under the Open Meetings Act.

ACC also bases its assertion that particular harm must be shown by citing one senator's statements during the Senate Jurispru-

dence Committee's review of the 1979 amendments to the statute, which added the news media to the standing section of the Act. *See* Act of June 7, 1979, 66th Leg., R.S., ch. 449, § 1, 1979 Tex. Gen. Laws 1015.[2] An individual senator's interpretation of a statute or an amendment does not control our decision. *See Commissioners' Court of El Paso County v. El Paso County Sheriff's Deputies Ass'n,* 620 S.W.2d 900, 902 (Tex. Civ.App.—El Paso 1981, writ ref'd n.r.e.). However, even accepting the senator's assessment that the plaintiff should have some particular connection to the event to challenge an Open Meetings Act violation, we conclude that the plaintiffs have sufficiently shown such connection.

We hold that the trial court erred in dismissing the petition for want of jurisdiction. Under *City of San Antonio v. Fourth Court of Appeals,* mandamus lies to correct proceedings brought under the Open Meetings Act. While the Texas Supreme Court in that case reached the merits of the issue whether the city had violated the Open Meetings Act, we decline to do so here because the trial court record is not well-developed due to its summary disposition. We express no opinion regarding whether ACC violated the notice provisions of the Open Meetings Act.

We conditionally grant the petition for writ of mandamus. This Court assumes that the trial court will act in accordance with this opinion. If it fails to do so, a writ of mandamus will issue.

---

**2.** We disagree with ACC's characterization of the 1979 amendments. The news media was not added as a special category of persons with standing; rather, the statute was amended to show that the news media is one component of the category of interested persons.